Mr. Chief Justice Cartter
delivered the opinion of the eourt.
We have no doubt as to what we ought to do in this matter. It is very desirable that there should be an expression of all the justices upon a question of practice of this kind (alluding to Mr. Wilson’s suggestion that the case be heard by a full bench), but it is very difficult to get it in the midst of the labor of the different courts, and I do not know but we may as well assume the burden of a decision.
This discussion has resulted in confirming the impressions that have been left on my mind by the discussions of this rule, to which I have listened in a protracted service in the Circuit Court. So that, though this question has for the first time been presented with thoroughness and fullness to the General Term, I am, from my nisi prim experience, familiar with every argument that has been advanced here.
*199 The rule in question was not adopted with a view of striking down the rights of parties litigant to a trial under the Constitution and the laws ; and for a very good reason, no power existed in the court to do that. The Constitution has provided that a party may make up an issue and have a trial before a jury in all cases where the value in controversy exceeds $20. And this court did not propose to repeal the Constitution.
We adopted this as a Buie of Practice; one of the means • that is pointed out in the processes of the court to produce results. It provides that when a plaintiff comes into court, states his demand fully and clearly and under the sanction of an oath, the defendant must present his denial of that demand and his purpose of defence under a sanction as high and as binding.
This rule was adopted iu this jurisdiction when we were overwhelmed with a great oppression of business. The calendar in the Circuit Court had run up to a thousand cases or thereabouts. Great delays in judgment occurred ; creditors were postponed in their collections to an indefinite time. Defendants naturally resorted to the formal denials of pleading for the purpose of securing the time that the delays of the law gave them.
We had precedents for this rule iu the jurisprudence of nearly every State. The only doubt we entertained was as to our power to make it. It was matter of serious misgiving to some of the members of the court whether it was not a species of legislation, and whether it was not a denial of the eitizens’ rights under the Constitution. It certainly looked very much like the exercise of legislative rather than judicial power. But after mature deliberation the court adopted it as a Buie of Practice, and as such it was very generally acquiesced iu by the bar. Still, the court had some misgivings about it, until a case went up from here to the Supreme Court of the United States, involving the power of this court to make rules of practice. That court construed the power given by the organic act of this court favorably to the view we had ; and now all doubt has been removed by *200 the action of the Supreme Court in a recent case (Smoot vs. Rittenhouse), in which this rule has been upheld.
Such, briefly, is the history of this rule and its office. It is a rule to prevent vexatious delays in the maturing of a judgment where there- is no defence, and at the same time to protect the rights of defendants in good faith contesting a claim, for both parties, plaintiffs and defendants, stand-upon a common plane and must be judged without presumptions as equals—equals before the law and in their rights.
Now, what does the rule mean, this being its office ? It is couched in very plain language. It says the defendant shall set out- his grounds of defence and swear to them. It .does not mean a defence in all its details of incident and fact, but the foundation of the defence. That is all. Those grounds ought not to be vague and indefinite. They should have significance and meaning, and should impress the idea of defence upon the court to which they are addressed. It was never contemplated that this rule required a party to follow his case through all the lights and shadows of the evidence in it. That would be to hold it essential that he should try his case in his plea. If that were done, what should we have here ? Why, discussions as to the consistency of a witness’ story, whether one witness did not contradict another, that the import of an irrelevant fact w’as one way or the other, and the like. The court, to ascertain whether he had stated the grounds of his defence, would be called upon to weigh and analyze testimony. And the moment we attempt to ascertain from a mass of testimony the resultant facts, we have got before us as large a case as the case itself could be on trial before a jury. A discussion that reviews all the facts and forces that enter into a verdict is not for the court to undertake before it will allow issues to be made up for a jury.
It is difficult to define the words “ grounds of defence ” by any language simpler or plainer than they are themselves. They mean the grounds that underlie the superstructure of a plea, the foundation facts that lie at the sill of the legal edifice you erect by your pleading. But after all that *201 you may say about their meaning, you will find nothing more expressive nor more comprehensible than this very word “grounds.”
If this be the true office of this rule, are there any impediments in these affidavits to its application here ?
It is said that this rule requires that the ‘affidavit of defence be made on personal knowledge,, whereas these affidavits state a certain condition of facts as known upou information and expected to be proved at the trial. If this view be adopted the affidavits do not comply with the rule and the judgment must stand. But can we adopt such a view and have the processes of justice go on and the rights of parties strictly defined ?
Now, we have held with reference to the plaintiff in such cases, that his attorney, his legal agent for the prosecution of his rights in this court, is the agent contemplated by the language of the rule as the person who may verify the declaration. Why ? Because the plaintiff may reside in Europe or Mexico. This practice exists here because the plaintiffs are not always lawyers, and because they do not all live here. This is but a small part of the territory of the United States, yet there are numerous cases where rights have to be vindicated here, rights of persons scattered throughout the country or living on its frontiers. They send them here to the members of the bar for their action, and, under a literal construction of this rule, requiring personal knowledge in the affiant, this rule could not be administered in their behalf a single term. How is the legal . agent, the attorne}7 of the plaintiff, to swear to the truth of the declaration ? The facts, generally, are not within his personal knowledge. He has to swear upou his information and belief, or that the affidavit is honestly made and verily believed. That is the highest testimony or verification that the nature of the case will permit. All that the rule requires, or was meant to require, is that the party shall furnish the court with the highest testimony or verification within his power.
Now, when you come to the defence, you encounter the *202 same difficulty. It is very rare, indeed, that a case is tried here where all. the knowledge necessary to establish it, or contradict it, is within the possession of one witness, and he, the defendant or plaintiff, as the case may be. If personal knowledge were requisite under this rule, a judgment must always be rendered against a defendant, no matter how good a defence he may in fact have, who has conducted the business in respect of which he is sued, through an agent. Of course the rule means nothing of that sort. How are the defendants to testify in this case to all the details of a transaction conducted through the directors and cashiers and presidents of two banks working more or less in a representative capacity, though to an extent personally, and each dependent on the other for a knowledge peculiar to him ? They state from information and belief the grounds of their defence,’and give the court assurance that they expect to vindicate their defence upon the trial. The rule does not contemplate any further requirement of them in their affirmance to the grounds of defence. We think that investigation of the point compels the conclusion that the court may, and under certain circumstances must, be satisfied by a candid publication of the information relied on for the defence under the sanction of an oath.
Now, it is further said that these affidavits refer to the pleas, and that that is not a compliance with the rule. The affidavit of Mattingly says : “The facts * * are fully set forth in my foregoing fourth plea; and I make oath to the same on information,” &c.
That affidavit treats the plea as the history of facts, not as the logical, or argumentative, or legal reflection of the facts. It treats it as the record of facts, not as the legal statement of a legal conclusion, and refers to it for such purposes, thereby transferring the facts stated in the plea into the very body of the affidavit, and they became the facts of that affidavit. Judged by the responsibility for perjury, this sw7earing to the truth of the facts contained in a record of the court is just as good as if they had been again,. *203 and with useless repetition embodied in the affidavit. As the grounds of defence are good if true, the judgment is reversed, and the case will proceed upon the pleas filed.